```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CHARLES ROBERT II, also known as
Snowflake 5391,

                          Plaintiff,
                                                 MEMORANDUM & ORDER
          -against-                              02-CV-6788(JS)(AKT)

THE CENTRAL INTELLIGENCE AGENCY and
THE DEPARTMENT OF JUSTICE,

                          Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:           Charles Robert, II, pro se
                         441B West Broadway
                         Long Beach, NY 11561

For Defendants:          Diane C. Leonardo-Beckmann, Esq.
                         United States Attorney's Office
                         610 Federal Plaza
                         Central Islip, NY 11722
```

SEYBERT, District Judge:

Presently pending before the Court in this Freedom of Information Act ("FOIA") action are Plaintiff Charles Robert's ("Plaintiff") motion for summary judgment, (Pl.'s Mot., Docket Entry 91), Defendants Central Intelligence Agency ("CIA") and Department of Justices' ("DOJ" and, collectively, "Defendants") cross motion for summary judgment, (Defs.' Mot., Docket Entry 98), and Plaintiff's letter motion requesting a hearing and/or the scheduling of a settlement conference, (Pl.'s Ltr. Mot., Docket Entry 109). For the following reasons, the parties' motions are DENIED.

BACKGROUND[1]

Plaintiff alleges that on March 29, 1989, Federal Bureau of Investigation ("FBI") Agent Allison interviewed him regarding allegations and documents that Plaintiff sent to Independent Counsel Lawrence Walsh[2] regarding the alleged diversion of Department of Health and Human Services funds through the International Medical Center, Inc. ("IMC") to the Contras. (Am. Compl. ¶ 24.) Plaintiff further alleges that on October 30, 1995, he filed a FOIA request with the National Archives and Records Administration ("NARA") seeking "the universe of documents that were generated from the March 29, 1989 FBI interview by FBI Agent Allison . . . regarding the diversion of unaudited pooled nonacquiescence funds by HHS General Counsel Juan del Real through [IMC] with the knowledge of high level DOJ officials." (Am. Compl. ¶ 29.) Plaintiff alleges that NARA denied Plaintiff's request and appeals. (Am. Compl. ¶¶ 30-39.) Particularly, on April 3, 1996,

---

[1] The following facts are taken from the Amended Complaint, (Am. Compl., Docket Entry 16 and Defs.' Ex. A, Am. Compl., Docket Entry 100-1), the parties' Local Rule 56.1 Statements, Orders in Plaintiff's other FOIA cases of which the Court has taken judicial notice, and Defendants' Declaration of Antoinette B. Shiner, (Shiner Aff., Docket Entry 101). Any relevant factual disputes are noted. All internal quotation marks and citations have been omitted.

[2] In 1986, Lawrence E. Walsh was appointed independent counsel to investigate the Iran-contra scandal. Neil A. Lewis, Lawrence E. Walsh, Prosecutor in Iran-Contra Scandal, Dies at 102, N.Y. Times, Mar. 20, 2014, https://www.nytimes.com/2014/03/ 21/us/politics/lawrence-e-walsh-iran-contra-prosecutor-dies-at-102.html.

2

NARA stated that "[a]fter consultation with the [CIA], we have determined that we must continue to withhold portions of the enclosed document under [FOIA] 5 U.S.C. 552(b)(3)." (Am. Compl. ¶ 34.)

I. The NARA Action

On May 13, 1998, Plaintiff filed a FOIA suit against NARA in this District under Docket Number 98-CV-3598 (the "NARA Action"). The NARA Action concerned Plaintiff's October 1995 request for "the universe of documents generated from a 1989 interview of Plaintiff by FBI Agent Carol Allison, and documents relating to the [IMC], which documents were alleged to have been held in the Office of Independent Counsel Lawrence Walsh." Robert v. The National Archives, No. 98-CV-3598, Docket Entry 31, at 2 (E.D.N.Y. May 22, 2000). NARA located documents relating to the IMC but failed to locate documents created by Agent Allison. Id.

On May 22, 2000, Judge Leonard D. Wexler granted NARA's motion to dismiss. Id. The court noted that Plaintiff appealed NARA's decision to redact a government employee's name from one of the IMC documents and that he "claim[ed] in this action that defendant has unlawfully withheld the documents first requested in October of 1995." Id. at 4. Judge Wexler held that NARA demonstrated that it conducted a thorough search and the documents created by Agent Allison were not in its possession. Id. at 6. On January 12, 2001, the Second Circuit affirmed Judge Wexler's

decision. Robert v. National Archives, 1 F. App'x 85 (2d Cir. 2001).

## II. The First CIA Action

On July 25, 2000, Plaintiff filed a FOIA action against the CIA, "seeking an order directing the CIA to release documents which allegedly had been transferred to it from NARA" regarding the IMC. Robert v. The Central Intelligence Agency, No. 00-CV-4325, Docket Entry 20, at 2-3 (E.D.N.Y. Jul. 16, 2001) (the "First CIA Action"). (See also Defs.' Ex. B, Robert v. CIA, July 16, 2001 Mem. & Order, Docket Entry 100-2.) On July 16, 2001, this Court dismissed Plaintiff's complaint based on his failure to file a FOIA request with the CIA prior to commencement and held that Plaintiff's FOIA request and complaint to NARA did not constitute an exhaustion of administrative remedies. Id. at 6. Parenthetically, this Court noted that after Plaintiff filed his lawsuit, he "filed a Freedom of Information request for the documents."[3] Id. at 3.

## III. Instant Action

On December 31, 2002, Plaintiff commenced this FOIA action against the CIA and DOJ. On October 7, 2003, Plaintiff

---

[3] However, the Court also noted that the CIA "d[id] not challenge the Plaintiff's explanation that dismissal is warranted so that he might resubmit his document request for CIA review under the new Administration." Robert v. CIA, July 16, 2001 Mem. & Order at 8.

4

filed his Amended Complaint. (Am. Compl.) The Amended Complaint alleges that Plaintiff made two FOIA requests: (1) a FOIA request to the CIA for "documents, denominated as the North Notebook documents, which were identified by the National Archives in a prior FOIA [action] seeking the release of the FBI Agent Allison documents, which were withheld pursuant to FOIA Exemption 3," (Am. Compl. ¶ 2), and (2) "[DOJ] documents denominated as the DOJ-CIA documents, which were the DOJ documents generated in defending Robert v. CIA, [00-CV]-4325 (Seybert, J)," (Am. Compl. ¶ 3).

A. CIA Request

Plaintiff alleges that on September 29, 2000, he filed a FOIA request with the CIA seeking "the CIA documents withheld pursuant to FOIA Exemption 3 by [NARA] . . . as identified in [its] April 4, 1996 page two attachment," and his request was docketed as F-2001-000176 on January 6, 2001. (Am. Compl. ¶ 53-54.) On December 7, 2001, the CIA denied Plaintiff's FOIA request and "advised that no records responsive to the request were located." (Am. Compl. ¶ 56.) Plaintiff alleges that he appealed and the denial of his request was affirmed, with the CIA indicating that "[a]t this time I must inform you that this agency has identified no records responsive to your request." (Am. Compl. ¶ 59.)

Plaintiff has submitted redacted documents dated April 22, 1985, September 6, 1985, September 16, 1985, and October 1, 1985 (collectively, the "North Notebooks"), that he alleges are

5

in the custody of NARA and were fully or partially classified pursuant to determinations made by the CIA, Department of Defense, and/or FBI. (See generally Pl.'s 56.1 Stmt., Docket Entry 58, ¶¶ 3, 6-7, 10-11, 14-15, 18, Exs. C-F; see also Pl.'s Aff., Docket Entry 93, ¶ 3 ("[o]ver the last thirteen years the plaintiff has winnowed down his FOIA requests for documents to four one-page CIA classified redacted 1985 North Notebook documents").)

Defendants have submitted the Affidavit of Antoinette Shiner ("Shiner"), an Information Review Officer for the Litigation Information Review Office at the CIA. (Shiner Aff. ¶ 1.) Shiner asserts that the CIA has no record of receiving a FOIA request from Plaintiff prior to July 2010. (Shiner Aff. ¶ 5.) Shiner alleges that on July 27, 2010, Plaintiff submitted a FOIA request for the following items: (1) "9/3/85 North-FBI Revell 'North Notebook' log entry," (2) "9/6/85 North-CIA-FBI Exemptions 1, 3 and NHAO," (3) "9/16/85 North-Call to Perot Exemptions 1 and 3," (4) "10/1/85 CIA-DOD FOIA Exemption 1 and 3 and reference to medivac [sic] helos," and (5) "All Robert II v. CIA 'c(3) exclusion' ex parte Declarations." (Shiner Aff. ¶ 6.)

Shiner further avers that by letter dated September 22, 2010, the CIA declined to process Plaintiff's first four requested items and advised him that the records he sought came "under the purview of [NARA]" and the "CIA is not authorized to release records originated by other government agencies even if we were to

6

locate any." (Shiner Aff. ¶ 7.) With respect to Plaintiff's fifth request, the CIA accepted the request and assigned it reference number F-2010-01579. (Shiner Aff. ¶ 7.) Subsequently, the CIA advised Plaintiff that it accepted his fifth request "in error" and explained that a FOIA exclusion c(3) was applicable because Plaintiff sought records maintained by the FBI. (Shiner Aff. ¶ 8.) The CIA closed the case file and declined to process Plaintiff's request. (Shiner Aff. ¶ 8.)

Shiner alleges that on December 20, 2010, NARA advised the CIA that it received a FOIA request from Plaintiff seeking the first four documents Plaintiff requested from the CIA on July 27, 2010. (Shiner Aff. ¶ 9, n.1.) NARA also enclosed three documents responsive to Plaintiff's request for CIA review. (Shiner Aff. ¶ 9.) On January 26, 2011, the CIA "provided redacted copies of the documents back to NARA and advised that certain information contained within all three documents must be withheld on the basis of FOIA exemptions (b)(1) and (b)(3)." (Shiner Aff. ¶ 10.)

B.  DOJ Request

Plaintiff alleges that on March 1, 2001, he filed a FOIA request regarding the "DOJ CIA Litigation documents which were the documents relied upon by Attorney General Ashcroft's attorneys when they litigated Robert v. CIA[.]" (Am. Compl. ¶ 61.) Plaintiff alleges that on May 1, 2001, his "FOIA appeal" was "closed" pursuant to a DOJ letter stating, among other things,

7

that "[i]nasmuch as this Office lacks the authority to compel the [Executive Office of the United States Attorney] to conduct the investigation you requested, I am closing your appeal file in this office." (Am. Compl. ¶ 64.) Plaintiff alleges that he appealed this decision and requested that DOJ issue a final decision. (Am. Compl. ¶¶ 66-68.)

DISCUSSION

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed 2d 202 (1986). In determining whether an award of summary judgment is appropriate, the Court considers the pleadings, deposition testimony, interrogatory responses, and admissions on file, together with other firsthand information that includes but is not limited to affidavits. Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

The movant bears the burden of establishing that there are no genuine issues of material fact. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Giglio

8

v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat summary judgment. Id. However, in reviewing the summary judgment record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).

On a motion for summary judgment, the Court must liberally construe a pro se litigant's complaint and "read a pro se litigant's supporting papers liberally, interpreting them to raise the strongest arguments that they suggest." Adeyi v. U.S., No. 06-CV-3842, 2010 WL 520544, at *3 (E.D.N.Y. Feb. 8, 2010) (internal quotation marks and citation omitted). However, the Court notes that while Plaintiff is proceeding pro se in this action, he was formerly a practicing attorney and "appeared in this Circuit and this District on numerous occasions." Robert v. Dep't of Justice, No. 05-CV-2543, 2005 WL 3371480, at *1, 14 (E.D.N.Y. Dec. 12, 2005), aff'd as modified on other grounds, 439 F. App'x 32 (2d Cir. 2011) (collecting cases). Additionally, Plaintiff filed twenty-four FOIA actions between 1985 and 2005. Id. at *14.

FOIA provides that "'any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine exemptions.'" Roman v. C.I.A., No. 11-CV-5944, 2013 WL 210224, at *3 (E.D.N.Y. Jan. 18, 2013) (quoting A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 143 (2d Cir. 1994)). While FOIA empowers district courts to enjoin an agency from improperly withholding agency records and to order the production of agency records, "'jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records.'" Roman, 2013 WL 210224, at *3 (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142, 109 S. Ct. 2841, 2846, 106 L. Ed. 2d 112 (1989)).

It is well established that "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA." Wilber v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004). While the Second Circuit has not yet determined whether exhaustion is jurisdictional under FOIA, this Court previously adopted the prevailing view in this Circuit that a party's failure to exhaust his administrative remedies does not impact jurisdiction. Buckley v. Amos, No. 14-CV-6055, 2015 WL 12564208, at *4 (E.D.N.Y. Oct. 16, 2015) (collecting cases). In the absence of additional guidance from the Supreme Court or the Second Circuit, the Court declines to depart from its prior holding and considers exhaustion to be a "prudential consideration" under FOIA. See Wilbur, 355 F.3d at

677. See also, e.g., Schwarz v. Dep't of Justice, No. 10-CV-0562, 2010 WL 2836322, at *3 (E.D.N.Y. Jul. 14, 2010), aff'd, 417 F. App'x 102 (2d Cir. 2011) ("[i]f [plaintiff] has failed to comply with the [FOIA] statutory exhaustion requirement, her claim may be dismissed for that jurisprudential reason, but that failure to comply with the statute does not deprive the Court of subject matter jurisdiction").

The Court liberally construes the Amended Complaint as asserting FOIA claims based on two separate document requests: (1) Plaintiff's alleged September 29, 2000, FOIA request to the CIA "seeking the CIA documents withheld pursuant to FOIA Exemption 3 by [NARA] . . . as identified in [its] April 4, 1996 page two attachment," (Am. Compl. ¶ 53), and (2) Plaintiff's alleged March 1, 2001, FOIA request to DOJ, (Am. Compl. ¶ 61). The Court will address the respective claims against the CIA and DOJ in turn.

I. CIA

The Court construes Defendants' brief as arguing that Plaintiff failed to exhaust his administrative remedies based on his failure to file a FOIA request with the CIA prior to the commencement of this action. (Defs.' Br., Docket Entry 99, at 4 (citing Shiner Decl. ¶ 5).) As set forth more fully above, Shiner attested that Plaintiff did not file a FOIA request with the CIA until 2010. (Shiner Aff. ¶ 5.)

11

In response, Plaintiff cites the portions of the Amended Complaint alleging that he filed a FOIA request on September 29, 2000 for the "'North Notebook' documents"; on January 6, 2001, that request was docketed as F-2001-000176; on December 7, 2001, Plaintiff's request was denied based on the CIA's failure to locate responsive documents; and he unsuccessfully appealed the CIA's denial of that request. (Pl.'s Reply Br., Docket Entry 106, at 4-5; Am. Compl. ¶¶ 53-59.) Plaintiff also notes that the Court's Order in the First CIA Action states that he filed a FOIA request after the commencement of that action. (Pl.'s Reply Aff., Docket Entry 107, ¶ 8 (quoting Robert v. CIA, July 16, 2001 Mem. & Order at 2-3).) Nevertheless, Plaintiff fails to submit any documentary evidence regarding his alleged FOIA request and subsequent appeal.

Clearly there is a factual dispute as to whether Plaintiff filed a FOIA request with the CIA and exhausted his administrative remedies. While the Court is troubled by Plaintiff's failure to submit his alleged correspondence with the CIA regarding his FOIA request, the Court will permit Plaintiff one final opportunity to submit documentary evidence supporting his allegation that he filed a FOIA request with the CIA and unsuccessfully appealed the CIA's denial of that request prior to the commencement of this action within fourteen (14) days of the date of this Memorandum and Order. To the extent the parties reference Plaintiff's 2010 FOIA request to the CIA, that request

12

significantly postdates both the filing of this action in 2002 and the filing of the Amended Complaint in 2003 and will not be considered in connection with Plaintiff's FOIA claim.

The Court acknowledges that, as set forth above, exhaustion is a prudential consideration in the FOIA context and does not preclude determination of the merits of Plaintiff's claim. However, it is impossible for the Court to determine whether the CIA improperly withheld agency records absent a review of Plaintiff's specific FOIA request and the CIA's alleged response, particularly in light of the CIA's position that Plaintiff failed to file any FOIA requests prior to 2010.

Accordingly, the parties' motions for summary judgment are DENIED with respect to Plaintiff's claim against the CIA. However, in light of the Court's directive regarding Plaintiff's submission of evidence regarding exhaustion, the CIA is granted leave to renew its motion for summary judgment within sixty (60) days of the date of this Memorandum and Order. If necessary, the Court will address the merits of Plaintiff's claim at that time.

II. DOJ

In a footnote, Defendants assert that "[b]ased upon Plaintiff's summary judgment motion, it appears that any other purported claims in the Amended Complaint have been abandoned . . . [and] many of Plaintiff's abandoned claims cannot be addressed because of the lack of specificity, i.e., lack of a

FOIA request number or any documentation." (Defs.' Br. at 2, n.1.) Defendants request the opportunity to submit further briefing to the extent the Court finds Plaintiff did not waive other FOIA claims. (Defs.' Br. at 2, n.1.) In response, Plaintiff appears to assert that his summary judgment motion was limited to his claim against the CIA and he has not "abandoned his FOIA request for the 'DOJ-CIA' documents." (Pl.'s Reply Br. at 11.)

As set forth above, the Court construes the Amended Complaint as asserting a claim against the DOJ regarding Plaintiff's alleged FOIA request for the "DOJ CIA Litigation documents." (Am. Compl. ¶ 61.) Plaintiff appears to indicate that his pending motion was a partial motion for summary judgment and the Court finds no basis to deem his claim against the DOJ waived. Parenthetically, while the Amended Complaint does not allege that an initial docket number was assigned to Plaintiff's DOJ FOIA request, it does allege that on March 15, 2001, his appeal was docketed as 01-1619. (Am. Compl. ¶ 62.) Accordingly, the Court construes the parties' motions as motions for partial summary judgment with respect to Plaintiff's claim against the CIA and GRANTS the DOJ leave to move for summary judgment within sixty (60) days of the date of this Memorandum and Order.

III. Motion for Hearing

The Court DENIES Plaintiff's motion for hearing (see Pl.'s Ltr. Mot.), and finds that oral argument is not warranted at

14

this time. The Court will address Plaintiff's request for a settlement conference, if necessary, in connection with Defendants' second motion for summary judgment.

CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Docket Entry 91) and letter motion for hearing (Docket Entry 109), and Defendants' cross motion for summary judgment (Docket Entry 98) are DENIED. As set forth more fully above, Plaintiff is directed to provide the Court with documentary evidence establishing that he filed a FOIA request with the CIA prior to the commencement of this action within fourteen (14) days of the date of this Memorandum and Order. Defendants are granted leave to renew their motion for summary judgment as to Plaintiff's claim against the CIA and move for summary judgment on Plaintiff's claim against the DOJ within sixty (60) days of the date of this Memorandum and Order.

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Plaintiff.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: February __28__, 2017
        Central Islip, New York