UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
CHARLES ROBERT II, also known as
Snowflake 5391,

                Plaintiff,

                                 MEMORANDUM & ORDER
     -against-                    02-CV-6788(JS)(AKT)

THE CENTRAL INTELLIGENCE AGENCY and
THE DEPARTMENT OF JUSTICE,

                Defendants.
----------------------------------------X
APPEARANCES
For Plaintiff:      Charles Robert, II, <u>pro</u> <u>se</u>
                 441B West Broadway
                 Long Beach, NY 11561

For Defendants:     Diane C. Leonardo-Beckmann, Esq.
                 United States Attorney's Office
                 610 Federal Plaza
                 Central Islip, NY 11722

SEYBERT, District Judge:

        Presently pending before the Court in this Freedom of Information Act ("FOIA") action is Defendants Central Intelligence Agency ("CIA") and Department of Justice's ("DOJ," and collectively, "Defendants") motion for summary judgment, (Defs.' Mot., Docket Entry 115). For the following reasons, Defendants' motion is GRANTED.

BACKGROUND

        In light of the Court's February 28, 2017 Memorandum and Order denying the parties' cross-motions for summary judgment, <u>Robert v. CIA</u>, No. 02-CV-6788, 2017 WL 782296, at *1 (E.D.N.Y.

Feb. 28, 2017), familiarity with the facts is assumed. In short, Plaintiff Charles Robert, also known as Snowflake 5391 ("Plaintiff"), alleges that Department of Health and Human Services ("HHS") funds had been diverted through the International Medical Center, Inc. ("IMC") to the Contras. Id. He claims that he sent relevant documents to Independent Counsel Lawrence Walsh, who was appointed to investigate the Iran-Contra scandal, and that on March 29, 1989, Federal Bureau of Investigation ("FBI") Agent Allison interviewed him regarding these documents. Id. (footnote and citation omitted). In this action, Plaintiff seeks, inter alia, "part of a mosaic of documents that reveal whether HHS General Counsel Juan del Real (1981-1985) had been CIA Director William Casey's E.O. 12333 illegal CIA domestic covert agent when he made his 1982-1985 Jackson v. Schweiker, 683 F.2d 1076 (7th Cir. 1982), 'nonacquiescence' policy decisions." (Pl.'s Opp., Docket Entry 126, at 1 (citations omitted).)

As the Court previously indicated, it "liberally construes [Plaintiff's] Amended Complaint as asserting FOIA claims based on two separate document requests: (1) Plaintiff's alleged September 29, 2000, FOIA request to the CIA 'seeking the CIA documents withheld pursuant to FOIA Exemption 3 by [the National Archives and Records Administration ("NARA")] . . . as identified in [its] April 4, 1996 page two attachment,'" (the "CIA Request"), and (2) Plaintiff's alleged March 1, 2001, FOIA request to DOJ,"

(the "DOJ Request").[1]  Robert, 2017 WL 782296, at *4 (citations omitted) (ellipsis and third alteration in original).

The parties cross-moved for summary judgment with respect to the CIA Request on April 19, 2016 and August 12, 2016. (See Pl.'s Mot., Docket Entry 91; Defs.' Aug. 2016 Mot., Docket Entry 98.)  On February 28, 2017, the Court denied the parties' motions but granted Plaintiff leave to "submit documentary evidence supporting his allegation that he filed a FOIA request with the CIA and unsuccessfully appealed the CIA's denial of that request prior to the commencement of this action."  Robert, 2017 WL 782296, at *5 (emphasis in original).  The Court also granted Defendants leave to renew their motion with respect to the CIA Request and to move for summary judgment with respect to Plaintiff's DOJ Request.  Id.

On March 16, 2017, Plaintiff filed a seventy-three-page affidavit along with his January 16, 2002 letter to the CIA. (Pl.'s Mar. 2017 Aff., Docket Entry 112.)  According to Defendants, the letter contained a specific reference number that allowed the CIA to locate Plaintiff's September 2000 request.  (Defs.' Br., Docket Entry 123 at 1.)  Defendants filed the present motion on

_____

[1] As the Court has already explained, "[t]o the extent the parties reference Plaintiff's 2010 FOIA request to the CIA, that request significantly postdates both the filing of this action in 2002 and the filing of the Amended Complaint in 2003 and will not be considered in connection with Plaintiff's FOIA claim." Robert, 2017 WL 782296, at *5.

June 2, 2017, renewing their motion for summary judgment on the CIA request and moving for summary judgment on the DOJ Request. (See Defs.' Mot.)  Plaintiff filed his opposition, as well as an additional forty-page affidavit, on July 24, 2017.[2]  (See Pl.'s Opp.; Pl.'s July 2017 Aff., Docket Entry 127.)

I.   The CIA Request

As described in CIA Information Review Officer Antoinette B. Shiner's ("Shiner") Supplemental Declaration,[3] by letter dated September 29, 2000, Plaintiff requested that the CIA release "documents withheld by the CIA pursuant to FOIA Exemption 3 as defined by" the "[NARA] FOIA Officer McReynolds April 4, 1996 page two attachment."[4]  (Supp. Shiner Decl. ¶ 3; Sept. 2000 Letter, Supp. Shiner Decl. Ex. A, Docket Entry 120, at ECF p. 7-8, at 7.) Additionally, in his letter, Plaintiff indicated that "the CIA

---

[2] In his opposition, Plaintiff "incorporates by reference" affidavits and a "white paper" totaling over 550 pages.  (Pl.'s Opp. at 3-4.)  The Court limits its review to the papers submitted in opposition to the present motion.

[3] Shiner's Supplemental Declaration is "based upon [her] personal knowledge and information made available to [her] in [her] official capacity."  (Supp. Shiner Decl., Docket Entry 120, ¶ 1.)

[4] Plaintiff's request is described differently elsewhere in the letter: "the universe of documents, including electronic records, that are cited in the April 4, 1996 letter of [NARA's] FOIA Director McReynolds' page 2 attachment, copy attached"; "de novo FOIA request with the page 2 attached as the definition of the FOIA requested universe of documents to be reviewed in camera by the Court"; and "the documents withheld by the CIA pursuant to FOIA Exemption 3."  (Sept. 2000 Letter at ECF p. 7.)

FOIA Officer refers to a 'one page' document," but expressed his belief that the document is two pages because it bears the notation "Page: 2." (See Sept. 2000 Letter at ECF p. 7.)

Plaintiff attached to his September 29, 2000 request a letter dated April 4, 1996 from R. Michael McReynolds, Director of NARA's Textual Reference Division, to Plaintiff (the "April 1996 Letter"). (Apr. 1996 Letter, Supp. Shiner Decl. Ex. A, Docket Entry 120, at ECF p. 9.) In pertinent part, the NARA letter reads:

> This is in further response to your October 30, 1995, [FOIA] request . . . regarding certain records of Independent Counsel Lawrence Walsh.
>
> After consultation with the [CIA], we have determined that we must continue to withhold portions of the enclosed document under [FOIA], 5 USC 552(b)(3). The statute for withholding is 50 USC 403.

(Apr. 1996 Letter at ECF p. 9.)[5]

_____

[5] To the extent the parties refer to Plaintiff's October 1995 FOIA request to NARA, those claims have been litigated and resolved in NARA's favor, (see Supp. Shiner Decl. ¶¶ 3-4 & n.3; Am. Compl., Aug. 2016 Leonardo Decl. Ex. A, Docket Entry 100-1, ¶¶ 29-49), and will not be considered here. In the NARA action, the Second Circuit affirmed the dismissal of Plaintiff's request based on lack of jurisdiction, Robert v. Nat'l Archives, 1 F. App'x 85, 87-88 (2d Cir. 2001). It held that there was no evidence that "NARA withheld any documents in response to Robert's FOIA request," but rather, that it had redacted information from a document pursuant to 5 U.S.C. § 552(b)(3). Id. Relatedly, because NARA was responsible for producing the April 1990 Document and redacting information from it (after consulting with the CIA), (See Apr. 1996 Letter at ECF p. 9); Robert v. Nat'l Archives, 1 F. App'x at 86-87, the question of whether NARA's redactions were proper is not before the Court, see N.Y. Times Co. v. U.S. Dep't of Homeland Sec., 959 F. Supp. 2d 449, 452 (S.D.N.Y. 2013) (citing U.S. Dep't of State v. Ray, 502 U.S. 164, 173, 112 S. Ct. 541, 546-47, 116 L. Ed. 2d 526

Enclosed with the April 1996 Letter was a one-page document dated April 5, 1990 (the "April 1990 Document"), that reads, in full[6]:

```
TOP SECRET CODEWORD WORKING PAPERS       Page: 2
rch for IMC                              Date: 4/5/90
E                 NORTH NOTEBOOK
THDATE            April 22, 1985
LDATE             April 22, 1985
EBOOK             1 Mar 85 - 23 Apr 85
PAGE              AMX000620
PAGE              AMX000620
ESSNO1            14096
ESSNO2            85-04-22

- Call from Clarridge
- Nothing on [Redacted]
- Nothing on [Redacted]
- Nothing on Names
```

(Apr. 1990 Doc., Supp. Shiner Decl. Ex. A, Docket Entry 120, at ECF p. 10.)   The document is notated as follows: "RESTRICTED INFORMATION DELETED PER FOIA EXEMPTION b(3) 50 USC 403 BY EKL NARA, DATE 4/3/96." (Apr. 1990 Doc. at ECF p. 10.)

The CIA responded to Plaintiff's request by letter dated July 11, 2001.  (July 2001 Letter, Supp. Shiner Decl. Ex. B, Docket Entry 120, at ECF p. 12-13.)  With respect to the "portion of [his]

---

(1991); Associated Press v. U.S. Dep't of Def., 554 F.3d 274, 283 (2d Cir. 2009)) ("The agency withholding documents or redacting information responsive to a FOIA request bears the burden of proving the applicability of claimed exemptions.").

[6] It appears that information near the left margin of the document was omitted.

request pertaining to the 'universe of documents,'" the CIA advised
him that the April 1990 Document is not a CIA record and "does not
reasonably describe any 'universe of documents' for which this
agency can conduct a search." (July 2001 Letter at ECF p. 12.)
The CIA directed Plaintiff to contact NARA for further assistance.
(July 2001 Letter at ECF p. 12.) However, the CIA accepted the
portion of Plaintiff's request for the first page of the April
1990 Document, though it noted that the document "is not a CIA
originated document." (July 2001 Letter at ECF p. 13.)

By letter dated December 7, 2001, the CIA explained to
Plaintiff that it searched for the first page of the April 1990
Document, but "[n]o records responsive to [his] request were
located." (Dec. 2001 Letter, Supp. Shiner Decl. Ex. C, Docket
Entry 120, at ECF p. 14-15.) On January 16, 2002, Plaintiff
appealed the CIA's December 7, 2001 decision, requesting, inter
alia, that it perform a more diligent search. (Jan. 2002 Letter,
Supp. Shiner Decl. Ex. D, Docket Entry 120, at ECF p. 16-33, at
17.) By letter dated December 2, 2002, the CIA's Agency Release
Panel affirmed the CIA's decision, informing Plaintiff that it
directed a thorough search but was unable to identify "records
responsive to [his] request" "for the first page of the [April
1990 Document] . . . which referred to 'North notebook' and was
described in [his] correspondence as an FBI Agency Allison

document." (Dec. 2002 Letter, Supp. Shiner Decl. Ex. E, Docket Entry 120, at ECF p. 34-36, at 35.)

## II. The DOJ Request

Plaintiff alleges that on March 1, 2001, he filed a FOIA request seeking

> "CIA Litigation" documents . . . relied upon by Attorney General Ashcroft's attorneys when they litigated Robert v. CIA[, 00-CV-4325 (Seybert, J),] in order to determine whether AG Ashcroft's attorneys were providing AG Ashcroft with the truth, the whole truth, and nothing but the truth, regarding litigation decisions being made by CIA assets within the DOJ, who were consulting with their CIA handlers, who were making decisions on behalf of CIA Director Tenet, upon information and belief, without the knowledge of CIA Director Tenet or the Attorney General Ashcroft.

(Am. Compl. ¶ 61 (emphases in original).)

In response to this allegation, Defendants submitted the declaration of John F. Boseker ("Boseker"), an Attorney Advisor in the Executive Office for the United States Attorneys ("EOUSA") of the DOJ, who is "specifically assigned to the component of [the] EOUSA designated to administer" FOIA. (Boseker Decl., Docket Entry 118, ¶ 1.) According to Boseker, EOUSA "researched [its] computer tracking system" and determined that it received Plaintiff's "purported" FOIA request on December 8, 2000. (Boseker Decl. ¶ 7.) Boseker explained that the subject of the request was noted as "CIA Litigation" and that EOUSA closed the file as "NOT FOIA." (Boseker Decl. ¶ 7.)

8

Plaintiff appealed to the Office of Information and Privacy ("OIP") on or about March 7, 2001, which closed its file on the appeal on or about May 1, 2001. (Boseker Decl. ¶ 7.) According to Plaintiff, his appeal was closed pursuant to a DOJ letter stating:

> You appealed <u>from the action of the [EOUSA] on your request for an investigation into the propriety of withholding of certain documents by the [CIA].</u>
>
> Please be advised that the function of the [OIP] is limited to the adjudication of appeals from denials of access to information pursuant to the [FOIA] and Privacy Act[ ] by components of the DOJ. <u>Inasmuch as this Office lacks the authority to compel the [EOUSA] to conduct the investigation you requested, I am closing your appeal file in this office.</u>

(Am. Compl. ¶ 64 (emphasis in original).) Similarly, Boseker's declaration states that, "[i]n essence[,] both EOUSA and OIP determined that the records sought was not a valid FOIA request and did not involve EOUSA or records of the United States Attorney's Office for the Eastern District of New York." (Boseker Decl. ¶ 7.)

According to Boseker, "[s]ince EOUSA did not consider this file subject to any litigation, it was apparently sent to the Federal Records Center in 2005 and is believed to have been destroyed pursuant to DOJ records retention policy." (Boseker Decl. ¶ 8.) Boseker added that he searched "two boxes full of

records compiled in the nearly two decades of Mr. Robert's voluminous requests and litigations" but was unable to locate the file at issue. (Boseker Decl. ¶ 9.)

DISCUSSION

Summary judgment will be granted where the movant demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine factual issue exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed 2d 202 (1986). In determining whether an award of summary judgment is appropriate, the Court considers the pleadings, deposition testimony, interrogatory responses, and admissions on file, together with other firsthand information that includes but is not limited to affidavits. Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011).

The movant bears the burden of establishing that there are no genuine issues of material fact. Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). Once the movant makes such a showing, the non-movant must proffer specific facts demonstrating "a genuine issue for trial." Giglio v. Buonnadonna Shoprite LLC, No. 06-CV-5191, 2009 WL 3150431, at *4 (E.D.N.Y. Sept. 25, 2009) (internal quotation marks and citation omitted). Conclusory allegations or denials will not defeat

10

summary judgment.  Id.  However, in reviewing the summary judgment record, "'the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"  Sheet Metal Workers' Nat'l Pension Fund v. Vadaris Tech. Inc., No. 13-CV-5286, 2015 WL 6449420, at *2 (E.D.N.Y. Oct. 23, 2015) (quoting McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997)).

On a motion for summary judgment, the Court must liberally construe a pro se litigant's complaint and "read a pro se litigant's supporting papers liberally, interpreting them to raise the strongest arguments that they suggest."  Adeyi v. U.S., No. 06-CV-3842, 2010 WL 520544, at *3 (E.D.N.Y. Feb. 8, 2010) (internal quotation marks and citation omitted).  However, the Court notes that while Plaintiff is proceeding pro se in this action, he was formerly a practicing attorney and has "appeared in this Circuit and this District on numerous occasions."  Robert v. Dep't of Justice, No. 05-CV-2543, 2005 WL 3371480, at *1, 14 (E.D.N.Y. Dec. 12, 2005), aff'd as modified on other grounds, 439 F. App'x 32 (2d Cir. 2011) (collecting cases).  Additionally, Plaintiff filed twenty-four (24) FOIA actions between 1985 and 2005.  Id. at *15.

FOIA provides that "'any member of the public is entitled to have access to any record maintained by a federal agency, unless that record is exempt from disclosure under one of the Act's nine

11

exemptions.'" Roman v. C.I.A., No. 11-CV-5944, 2013 WL 210224, at *3 (E.D.N.Y. Jan. 18, 2013) (quoting A. Michael's Piano, Inc. v. FTC, 18 F.3d 138, 143 (2d Cir. 1994)). While FOIA empowers district courts to enjoin an agency from improperly withholding agency records and to order the production of agency records, "'jurisdiction is dependent on a showing that an agency has (1) improperly (2) withheld (3) agency records.'" Id. (quoting U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142, 109 S. Ct. 2841, 2846, 106 L. Ed. 2d 112 (1989)). "Documents are 'withheld' when an agency denies valid access to documents within its control." Robert v. Nat'l Archives, 1 F. App'x at 87 (citing Tax Analysts, 492 U.S. at 149–50, 109 S. Ct. at 28512841, 106 L. Ed. 2d 112).

It is well established that "exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA." Wilbur v. CIA, 355 F.3d 675, 676 (D.C. Cir. 2004) (internal quotation marks and citation omitted). This Court previously adopted the prevailing view in this Circuit that a party's failure to exhaust his administrative remedies does not impact jurisdiction, but is a "prudential consideration" under FOIA. Buckley v. Amos, No. 14-CV-6055, 2015 WL 12564208, at *4 (E.D.N.Y. Oct. 16, 2015) (internal quotation marks omitted) (collecting cases); see Wilbur, 355 F.3d at 677. This prudential

consideration is appropriately addressed on summary judgment. Roman, 2013 WL 210224, at *5 (compiling cases).

"A district court 'may grant summary judgment in favor of an agency on the basis of agency affidavits[7] if they contain reasonable specificity of detail rather than mere conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith.'" Id. at *4 (quoting Grand Cent. P'ship, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999)) (emphasis in original). "When agency submissions are adequate on their face, a district court has the discretion to 'forgo discovery and award summary judgment on the basis of affidavits.'" Id. (quoting Carney v. U.S. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994)) (internal quotation marks omitted). To defeat summary judgment, the plaintiff must show agency bad faith "'sufficient to impugn the agency's affidavits or declarations.'" Id. (quoting Labella v. FBI, No. 07-CV-2330, 2008 WL 2001901, at *6 (E.D.N.Y. May 8, 2008)) (internal quotation marks omitted).

I.   The CIA Request

Defendants argue that the CIA did not withhold any documents in response Plaintiff's CIA Request. (Defs.' Br. at 7-

---

[7] Unsworn declarations under penalty of perjury, such as the Shiner and Boseker Declarations, may be used in place of affidavits. 28 U.S.C. § 1746.

8.) Specifically, they contend that the request for the "universe" of documents withheld "pursuant to FOIA exemption 3 as defined by" the April 1990 Document did not "reasonably describe" any records. (Defs.' Br. at 7-8.) Further, Defendants maintain that the CIA searched for and could not locate documents responsive to Plaintiff's request, and that the documents were not in its possession. (Defs.' Br. at 8.) The Court construes Defendants' brief as arguing that (1) Plaintiff's request for the "universe" of documents was not a valid FOIA request, and therefore, that he did not exhaust his administrative remedies before filing suit, and (2) the CIA fulfilled its obligations to the extent Plaintiff requested the first page of the April 1990 Document.

Plaintiff responds that he "made a valid FOIA request for four unredacted North Notebook documents that exist and which are in the control of the government." (Pl.'s Opp. at 6.) He argues that "the agency has improperly withheld these agency documents and did not make an adequate search for these identifiable documents in their control." (Pl.'s Opp. at 6.) Notably, Plaintiff maintains that his April 19, 2016 motion (filed nearly sixteen years after his CIA Request) informed Defendants that his "original FOIA request for the April 22, 1985 'North Notebook' documents was winnowed down to the four one page redacted 1985 CIA classified 'North Notebook' documents," namely:

1. 4-22-85 "<u>IMC</u>" Top Secret Working Paper <u>CIA</u> Exemption 3
2. 9/6/85 North-<u>CIA-FBI</u> Exemptions 1, 3 with 9/10/85 NHAO notation
3. 9/16/85 North-Calls to Perot and Natl Archives <u>CIA</u> Exemptions 1 and 3
4. 10/1/85 <u>CIA-DOD</u> FOIA Exemption 1 and 3 and medivac helos

(Pl.'s Opp. at 7-9.)  The Court notes that the first of the "North Notebook" documents to which Plaintiff refers--"4-22-85 'IMC' Top Secret Working Paper <u>CIA</u> Exemption 3--is the April 1990 Document. (<u>See,</u> <u>e.g.,</u> Pl.'s Apr. 2016 Br., Docket Entry 92, at 2; Pl.'s Opp. at 9.)[8]

A.    Documents Withheld "Pursuant to FOIA Exemption 3"

A proper FOIA request must "(i) reasonably describe[ ] such records and (ii) [be] made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed."  5 U.S.C. § 552(a)(3)(A).  "A record is 'reasonably described if a professional employee of the agency familiar with

---

[8] Plaintiff's description of the "4-22-85 IMC" document in his April 2016 brief echoes the contents of the April 1990 Document: "The top line of the document identifies the source of the document as 'Top Secret Codeword Working Papers.'  The document refers to a search for 'IMC' as a reference.  The names on the document are redacted. . . .  [NARA's April 1996 Letter] advised that NARA had located this document as part of the [P]laintiff's request to NARA for a mosaic of documents from the NARA archived records of Independent Counsel Lawrence Walsh."  (Pl.'s Apr. 2016 Br. at 2.)  Additionally, in Plaintiff's opposition, he provides a web address for the "4-22-85" document, which links to the April 1996 Letter and the attached April 1990 Document. (Pl.'s Opp. at 9 (citing http://www.snowflake5391.net/NorthNotebook.pdf).)

the subject matter can locate the records with a reasonable amount of effort.'" Roman, 2013 WL 210224, at *6 (quoting Freedom Watch, Inc. v. CIA, No. 12-CV-0721, 2012 WL 4753281, at *6 (D.D.C. Oct. 5, 2012)). Similarly, under CIA regulations, a FOIA request must "reasonably describe the records of interest," which "means that documents must be described sufficiently to enable a professional employee familiar with the subject to locate the documents with a reasonable effort. . . . Extremely broad or vague requests or requests requiring research do not satisfy this requirement." 32 C.F.R. § 1900.12(a). "The plaintiff is considered to have failed to exhaust [his] administrative remedies, and the complaint must be dismissed" if he failed to make a proper FOIA request pursuant to the agency's regulations. Roman, 2013 WL 210224, at *6 (citing Vest v. Dep't of Air Force, 793 F. Supp. 2d 103, 114 (D.D.C. 2011); McKevitt v. Mueller, 689 F. Supp. 2d 661, 667 (S.D.N.Y. 2010)).

The Court concludes that Plaintiff's CIA Request for the "documents withheld by the CIA pursuant to FOIA Exemption 3 as defined by the [NARA] FOIA Officer McReynolds April 4, 1996 page two attachment," as well as the other iterations of this request, (Sept. 2000 Letter at ECF p. 7), did not comply with FOIA or the CIA's regulations. First, the Court agrees that the request did not "reasonably describe the records of interest," as required by CIA regulations, because it required additional research and was

impermissibly broad and vague.   32 C.F.R. § 1900.12; see also

Manna v. U.S. Dep't of Justice, 106 F. Supp. 3d 16, 19 (D.D.C.

2015) (quoting Am. Chemistry Council, Inc. v. U.S. Dep't of Health

& Human Servs., 922 F. Supp. 2d 56, 62 (D.D.C. 2013)) ("Agencies

are not obligated to search beyond the four corners of the request,

nor are they required to divine a requester's intent.") (internal

quotation marks omitted).   The agency informed Plaintiff of its

determination, (see July 2001 Letter at ECF p. 12 ("Concerning

that portion of your request pertaining to the 'universe of

documents,' please be advised that the attachment you provided

does not reasonably describe any 'universe of documents' for which

this agency can conduct a search.   Further, the document is not a

CIA record.")), but he responded with a seventeen-page appeal that

did not meaningfully narrow or clarify his request, (see Jan. 2002

Letter).   Second, as the Second Circuit explained in Plaintiff's

NARA litigation, Plaintiff misinterpreted the agency's response to

his 1995 NARA request (which forms the basis of his CIA Request).

See Robert v. Nat'l Archives, 1 F. App'x at 87 (explaining that

Plaintiff's claim rested upon a "faulty factual premise" where he

believed NARA withheld documents from him, when NARA in fact only

withheld certain information in the documents that it provided to

him).   The April 1996 Letter and the April 1990 Document make clear

that NARA withheld information, not documents, under FOIA

Exemption 3.   (Apr. 1996 Letter at ECF p. 9 ("[W]e have determined

that we must continue to withhold portions of the enclosed document under [FOIA], 5 USC 552(b)(3).”); Apr. 1990 Doc. at ECF p. 10 (“RESTRICTED INFORMATION DELETED PER FOIA EXEMPTION b(3)”).) Thus, Plaintiff’s request did not reasonably describe any documents that the CIA withheld, and a CIA employee could not have found any pertinent records with a “‘reasonable amount of effort.’” See Roman, 2013 WL 210224, at *6 (quoting Dale v. IRS, 238 F. Supp. 2d 99, 105 (D.D.C. 2002)) (holding that request for “all files and/or reports” on the “Arch of the Covenant” was not specific enough for a CIA employee to find relevant files with a “reasonable amount of effort”).

 Plaintiff’s argument that he has since “winnowed down” his request to four one-page, identifiable documents misses the mark, since his original request (nearly eighteen years ago) for a “universe” of documents was invalid. In fact, by now identifying the specific documents he seeks, Plaintiff underscores the vagueness of his initial CIA Request.

 In sum, the CIA properly rejected Plaintiff’s CIA Request because he did not “reasonably describe” the records sought, and therefore, did not comply with FOIA or the CIA’s regulations. Accordingly, Plaintiff “is considered to have failed to exhaust his administrative remedies, [ ] summary judgment must be granted in [D]efendants’ favor,” and the claim for documents withheld “pursuant to FOIA Exemption 3” is DISMISSED WITHOUT

PREJUDICE. See Roman, 2013 WL 210224, at *6 (citing Vest, 793 F. Supp. 2d at 114; Manfredonia v. SEC, No. 08-CV-1678, 2009 WL 4505510, at *6 (E.D.N.Y. Dec. 3, 2009)).

    B.   The April 1990 Document

        An agency responding to a FOIA request "need not 'take extraordinary measures to find the requested records, but only to conduct a search reasonably designed to identify and locate responsive documents.'"   Roman, 2013 WL 210224, at *4 (quoting Garcia v. U.S. Dep't of Justice, 181 F. Supp. 2d 356, 368 (S.D.N.Y. 2002)).   A search is adequate even if it does not produce all relevant material.   Id. (quoting Garcia, 181 F. Supp. 2d at 368).

        It does not appear that Plaintiff is challenging the CIA's failure to locate "page one" of the April 1990 Document-- also known as the "4-22-85 'IMC' Top Secret Working Paper CIA Exemption 3" document.   (See Pl.'s Opp. at 8-9.)   However, to the extent he is, the CIA has shown that it has met its obligations under FOIA because it conducted a reasonable search, even though the document was apparently not in its possession or control.

        First, the CIA informed Plaintiff that his "request was processed in accordance with the FOIA . . . and the CIA Information Act," but that "[n]o records responsive to [his] request were located" despite its "thorough and diligent" searches, as described in the Supplemental Shiner Declaration and its attachments.   (Suppl. Shiner Decl. ¶¶ 4-7; Dec. 2001 Letter.)

19

Additionally, after Plaintiff appealed the initial decision, the CIA informed him that his "appeal ha[d] been presented to the appropriate members of the Agency Release Panel, the Information Review Officers for the Directorate of Operations, and the Director of Central Intelligence area, . . . . [who] directed that a thorough search be conducted of those records systems which could reasonably be expected to contain documents responsive to [the] request." (Dec. 2002 Letter at ECF p. 35.) However, no records were located. Second, in its communications with Plaintiff, the CIA explained that while it accepted his request, the April 1990 Document that he provided was "not a CIA originated document," and it suggested that he contact NARA. (July 2001 Letter.) Further, in Plaintiff's brief in support of his summary judgment motion, he acknowledged that the April 1990 Document and related records were in NARA's possession--they "had been transferred to the NARA in 1995 after the Iran-Contras investigation terminated." (Pl.'s Apr. 2016 Br. at 2). Therefore, it is unsurprising that the CIA was unable to locate "page one" of the April 1990 Document. See Pena v. U.S. Customs & Border Patrol, No. 06-CV-2482, 2007 WL 1434871, at *2 (E.D.N.Y. May 14, 2007) (citing Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 150, 100 S. Ct. 960, 968, 63 L. Ed. 2d 267 (1980)) ("An agency is not required to procure documents that are not already in its

possession. . . . Where documents do not exist, an action for their production is subject to dismissal.").

Thus, "[e]ven if we were to construe Robert's claim as suggesting that [the CIA] 'withheld' [the first page of the April 1990 Document] by its lack of diligence in conducting the requested search, the Declaration" and the evidence in the record "adequately establish[ ] that [the CIA] properly discharged its statutory duties, warranting summary judgment."[9] Robert v. Nat'l Archives, 1 F. App'x at 87-88 (citing Carney 19 F.3d at 812). Accordingly, Plaintiff's claim with respect to the first page of the April 1990 Document is DISMISSED WITH PREJUDICE.

## II. The DOJ Request

Defendants contend that Plaintiff did not make "a proper FOIA request" to the DOJ/EOUSA, and that as a result, there has been no violation of FOIA requirements. (Defs.' Br. at 11.) Plaintiff avers that he "made a valid FOIA request" for "the 2000-2001 Robert I v. CIA 'DOJ-CIA' litigation documents" that would "reveal the 'informal procedures' the DOJ used in Robert I v. CIA

---

[9] The Court notes that despite Plaintiff's arguments to the contrary, (Pl.'s Opp. at 13-16), the CIA's initial inability to locate files related to Plaintiff's September 2000 CIA Request does not show that Defendants acted with bad faith. Defendants came forward with relevant records after Plaintiff directed the CIA to the request's reference number. (Suppl. Shiner Decl. ¶ 2); see also Roman, 2013 WL 210224, at *5 (quoting Garcia, 181 F. Supp. 2d at 368) ("A search is 'reasonable and adequate even if it fails to produce all relevant material.'" (internal quotation marks omitted)).

whereby the DOJ attorneys withheld from this court material facts regarding the CIA that reveal E.O. 12333 illegal CIA domestic covert operations." (Pl.'s Opp. at 10-12.)

Plaintiff has not supplied the Court with evidence of his purported FOIA request to the DOJ,[10] but has offered only conclusory statements that the request was valid.[11] Additionally, since it was not identified as subject to litigation, the DOJ's file on Plaintiff's request "was apparently sent to the Federal Records Center in 2005 and is believed to have been destroyed." (Boseker Decl. ¶ 8.) Further, the EOUSA conducted a review of documents related to Plaintiff's various FOIA requests and was unable to locate the file at issue.[12] (Boseker Decl. ¶ 9.)

---

[10] It appears that Plaintiff's copies of the relevant documents were destroyed when his home was flooded during Hurricane Sandy. (See Pl.'s Mar. 2017 Aff., Docket Entry 112, ¶¶ 5-6.)

[11] For example, without citing to evidence or authority, Plaintiff argues that he "made a valid FOIA request pursuant to 5 U.S.C. § 552(a)(5)(B)," (Pl.'s Opp. at 10), and "EOUSA's issuing a docket number provides subject matter jurisdiction of the court," (Pl.'s Opp. at 12).

[12] Plaintiff argues that "[a]fter reading two boxes of Plaintiff's documents, [Boseker] knew whether . . . the FOIA-requested DOJ-CIA documents included documents from the Robert I v. CIA EDNY DOJ case file. . . . [H]e had a Pavelic duty to itemize those documents as evidence . . . ." (Pl.'s Opp. at 24.) Plaintiff's position is unpersuasive. The issue is whether Plaintiff filed a valid FOIA request for the documents he now seeks, not whether EOUSA possesses responsive documents notwithstanding his failure to properly request them.

According to the Boseker Declaration, the EOUSA and OIP "determined that the [DOJ Request] was not a valid FOIA request and did not involve EOUSA or records of the United States Attorney's Office for the Eastern District of New York." (Boseker Decl. ¶ 7); see 28 C.F.R. 16.6(d) (citing requests that "do[ ] not reasonably describe the records sought" and information that "is not a record subject to the FOIA" as examples of "adverse determinations" or "denials of requests" by DOJ). This evidence is consistent with the allegation in Plaintiff's Amended Complaint that on May 1, 2001, the DOJ closed his FOIA appeal because the OIP stated that it "lack[ed] the authority to compel the [EOUSA] to conduct the investigation [he] requested"--"an investigation into the propriety of withholding of certain documents" by the CIA. (Am. Compl. ¶ 64.)

Plaintiff has not rebutted the Boseker Declaration, which is adequate on its face, or shown that the DOJ exhibited bad faith "'sufficient to impugn the agency's affidavits or declarations.'" Roman, 2013 WL 210224, at *4 (quoting Labella, 2008 WL 2001901, at *6 (internal quotation marks omitted). The evidence before the Court--and the allegations in the Amended Complaint--bear one conclusion, that Plaintiff's DOJ Request was not a valid FOIA request. Therefore, Plaintiff failed to exhaust his administrative remedies, and the Court must award summary judgment to Defendants. See id. at *6-7.

Accordingly, Plaintiff's claims with respect to the DOJ Request are DISMISSED WITHOUT PREJUDICE.

Plaintiff's request for a settlement conference "that could lead to a quiet settlement whereby the [C]ourt would not have to decide the [D]efendants' June 2, 2017 SJM," (Pl.'s Opp. at 24-25), is DENIED AS MOOT.

The Court has considered Plaintiff's remaining contentions--e.g., regarding Executive Order 13526[13]--and finds them to be without merit.[14]  (See Pl.'s Opp. at 13-24.)

---

[13] The parties dispute the applicability of Executive Order 13526, (Defs.' Br. at 12-13; Pl.'s Opp. at 21-22), "which purportedly established a new internal review procedure regarding the release of classified documents," Robert v. Dep't of Justice, 439 F. App'x at 34.  As discussed above, Plaintiff's claims fail because the CIA and DOJ Requests were not proper FOIA requests, with the exception of the portion of the CIA Request seeking the first page of the April 1990 Document. However, the agency met its statutory obligation to conduct an adequate search for that page.  Therefore, as explained by the Second Circuit, "Executive Order 13526 . . . does not apply to this case because none of the documents sought by Robert . . . were withheld based on a FOIA exemption related to classified information."  Id. at 34.  Similarly, because Defendants did not deny a request for "informal procedures," the Court need not "make [a] de novo review[ ] of the FOIA-requested 'informal procedures' documents."  (See, e.g., Pl.'s Opp. at 2, 10.)

[14] For example, Plaintiff argues that "AUSA Leonardo . . . knows that Associate AG Brand, the author of the 2016 classified 'PCLBO E.O. 12333 Report re the CIA and the NSA,' knows whether 2002-2004 FBI General Counsel Wainstein and FBI Director Mueller's Chief of Staff, had known in 2004 during the Robert II v DOJ litigation, that the 1982-2004 E.O. 12333 Top Secret 'FISA exempt' NSA TSP continued to be conducted without any Article I 'Gang of Eight' or Article III FISC reviews and check and balances."  (Pl.'s Opp. at 20.)

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion for summary judgment (Docket Entry 115) is GRANTED. To the extent Plaintiff seeks the first page of the April 1990 Document from the CIA, that claim is DISMISSED WITH PREJUDICE. Plaintiff's remaining claims relating to the DOJ Request and the portion of the CIA request seeking documents withheld by the CIA "pursuant to FOIA Exemption 3" are DISMISSED WITHOUT PREJUDICE. The Court notes that Plaintiff is required to obtain leave from Judge Garaufis before filing any future FOIA complaints. <u>See</u> <u>Robert v. Dep't of Justice</u>, 439 Fed. App'x at 34-35 ("Here, the District Court [Judge Garaufis] did not err or abuse [his] discretion in enjoining Robert from filing further complaints raising FOIA claims without leave of the court, given Robert's history of filing vexatious, burdensome, and meritless FOIA complaints.").

The Clerk of the Court is directed to enter judgment accordingly, mark this case CLOSED, and mail a copy of this Memorandum and Order to the <u>pro se</u> Plaintiff.

SO ORDERED.


Dated: March __31__, 2018      /s/ JOANNA SEYBERT_____
       Central Islip, New York    Joanna Seybert, U.S.D.J.